UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PETER MILLAR, LLC,

        Plaintiff,

    v.

PETER MILLAR, LP,

        Defendant.

Case No. 1:25-cv-00761-CDB

FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

(Docs. 15, 22)

**14-Day Objection Period**

Clerk of the Court to Assign District Judge

Pending before the Court is the motion of Plaintiff Peter Millar, LLC, for default judgment against Defendant Peter Millar, LP ("Defendant") and declaration of counsel for Plaintiff in support thereof, filed on September 16, 2025, as well as supplemental briefing permitted by the Court. (Docs. 15, 22).  For the reasons set forth herein, the undersigned will recommend that Plaintiff's motion be granted.

I.    **Relevant Background**

    A.    **Allegations of the Complaint**

On June 23, 2025, Plaintiff initiated this action with the filing of a complaint assert claims against Defendant of trademark infringement, false designation of origin, and unfair competition under the Lanham Act, as well as common law unfair competition and trademark infringement and violation of California unfair competition law.  (Doc. 1).

According to the allegations of its complaint, Plaintiff was incorporated in Delaware in 2009, is registered to do business in California, and is a wholly owned subsidiary of Richemont International SA.  Plaintiff creates apparel and accessories, including for large sporting

organizations and collegiate teams and conferences.  *Id.* ¶¶ 7-9.  Plaintiff registered multiple marks with the United States Patent and Trademark Office ("USPTO") related to the "PETER MILLAR" branding, specifically registration numbers 2,881,454; 5,297,581; 7,244,547; 4,170,918; and 6,183,989.  *Id.* ¶ 11.  Plaintiff attaches the USPTO registration certificates for each number.  *Id.*, Ex. B.  On June 9, 2023, Jinxu Wei formed the Peter Millar, LP, entity, named as Defendant in this action.  *Id.* ¶ 14.  Plaintiff attaches a printout of the Defendant's Certificate of Limited Partnership from the California Secretary of State online records.  *Id.*, Ex. C.

Wei is general partner and agent for service of process for Defendant, at the address of 3830 Saco Road, Bakersfield, California, and Defendant adopted the trade name "Peter Millar, LP," without authorization.  Defendant's trade name is "nearly identical to Plaintiff's PETER MILLAR trade name and mark," and Plaintiff's own trade name and mark "has been diverted as a result of Defendants' adoption" of the Peter Millar, LP, name.  Further, "[c]urrent customers and prospective customers of Plaintiff are likely to be confused as a result of Defendant's adoption" of said name.  *Id.* ¶¶ 15-19.  Plaintiff sent a "cease-and-desist letter" on May 6, 2025, to Wei and Defendant using Defendant's registered address, wherein it objected to Defendant's use of the trade name and demanded Defendant dissolve the entity, as well as cease and desist from using any "PETER MILLAR" mark registered to Plaintiff.  *Id.* ¶ 20.  Plaintiff attaches a copy of the letter.  *Id.*, Ex. D.

Plaintiff received no response to its letter and "has no evidence that Defendants have complied with the demands" set forth in the letter.  Defendant's acts are "likely to cause confusion, mistake, and deception among the relevant consuming public" and are likely to deceive said public "into believing, mistakenly, that the [Defendant] is associated or affiliated with, or otherwise authorized by, Plaintiff."  Further, Defendant's acts are willful and with intent to trade on the goodwill of Plainiff's "PETER MILLAR" marks and trade name.  *Id.* ¶¶ 21-23.

In its prayer for relief, Plaintiff seeks the Court enter a permanent injunction restraining Defendant from infringing on Plaintiff's "PETER MILLAR" marks and trade name in any way, among other related restrictions; ordering Defendant to deliver to Plaintiff all items or materials bearing the Plaintiff's marks or trade name or similar versions; directing the California Secretary of State to update its records and take appropriate measures to remove Defendant's infringing

entity; awarding all profits and gains by Defendant to Plaintiff, as well as attorney's fees and costs of suit accrued herein, and for such other relief as the Court deems just and proper. *Id.* at 11-14.

### B.      Relevant Procedural History

On July 2, 2025, Plaintiff filed an *ex parte* motion for substitute service on the California Secretary of State. (Doc. 7). The Court denied the motion without prejudice on July 15, 2025, and Plaintiff filed a renewed motion on July 28, 2025. (Docs. 8, 9). The Court granted the renewed motion on July 30, 2025. (Doc. 10). Plaintiff filed a proof of service indicating completion of substitute service upon the California Secretary of State by hand delivery of the summons and complaint on July 31, 2025, to Katie Abraham, indicated as authorized to accept service for the California Secretary of State, at 1500 11th Street, 3rd Floor, Room 390, Sacramento, California. (Doc. 11).

Following Defendant's failure to timely appear and respond to the complaint, upon Plaintiff's request, the Clerk of the Court entered default against Defendant on August 22, 2025. (Docs. 12, 13). Plaintiff thereafter timely filed a motion for default judgment against Defendant on September 16, 2025. (Doc. 15). Plaintiff filed a proof of service by substitute service on the California Secretary of State of the "notice of entry." (Doc. 16). The Court, noting Plaintiff's motion for default judgment was itself unaccompanied by any proof of service and that it was unclear from the proof of service whether Plaintiff complied with the Court's order to serve upon Defendant a copy of its minute order (Doc. 14), directed Plaintiff to file proofs of service therefor. (Doc. 17).

On September 25, 2025, Plaintiff filed a proof of service indicating completion of substitute service upon the California Secretary of state by hand delivery of a copy of the Court's minute order, the entry of default, and the motion for default judgment documents, on September 26, 2025, to Charles Yarborough, indicating Mr. Yarborough's title as deputy, at 1500 11th Street, Sacramento, California. (Doc. 18).

### C.      Motion for Default Judgment

In its motion for default judgment pursuant Federal Rule of Civil Procedure 55(b)(2) (Doc. 25), Plaintiff asserts that Defendant properly was served by substitute service on the California

Secretary of State and the deadline for Defendant to file a responsive pleading has passed. *See id.* Plaintiff argues that as the Clerk of the Court has entered Defendant's default, a default judgment is warranted based on the seven factors for entering a default judgment under *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). *Id.* at 8-13. Plaintiff seeks the Court enter a default judgment granting Plaintiff a permanent injunction restraining Defendant from infringing on its "PETER MILLAR" marks or trade name, ordering Defendant to deliver to Plaintiff all items that bear infringing marks and directing Defendant to file a report setting forth its compliance, and instructing the California Secretary of State to update its records and take administrative steps against Defendant. *See* (Doc. 15-2).

The Court held a hearing on the motion for default judgment on November 3, 2025. (Doc. 20). Plaintiff's counsel Reel Mustafa and Shamar Toms-Anthony appeared; neither Defendant nor any representative on its behalf appeared. *Id.* The Court granted leave for Plaintiff to file supplemental briefing addressing the issue of the Court's authority to award the injunctive relief identified in Plaintiff's proposed order as directed toward the California Secretary of State. (Doc. 21). Plaintiff timely filed its supplemental brief on November 10, 2025. (Doc. 22).

## II.    **Legal Standard**

In general, "default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel*, 782 F.2d at 1472). Prior to entry of default judgment, there must be an entry of default. *See* Fed. R. Civ. P. 55. Upon entry of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party. Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam). However, "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *United States v. Cathcart*, No. C 07-4762-PJH, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)); *accord DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (allegations that do no more than "parrot" the elements of a claim not deemed admitted). In other words, "facts which are not established by the pleadings of the prevailing party, or claims which

4

are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

A district court has discretion to grant or deny a motion for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). The Ninth Circuit has identified seven factors to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72. Entry of default judgment is not appropriate where the second and third factors weigh against plaintiff. *See Mnatsakanyan v. Goldsmith & Hull APC*, No. CV-4358 MMM (PLAx), 2013 WL 10155707, at *10 (C.D. Cal. May 14, 2013) ("The fact that factors two and three weigh against the entry of default judgment is particularly significant, as courts often treat these as the most important factors.") (citing cases).

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp.2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. § 2688, at 63 (3d ed. 1998)). However, courts may decline to enter default judgment if a party's claims are legally insufficient. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *Aldabe*, 616 F.2d at 1092-93 ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant").

## III.    **Discussion**

### A.    **The Court has Jurisdiction Over the Action**

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. *United States. v. Summer*, 226 F.3d 1005, 1009 (9th Cir. 2000). Federal

courts have federal question jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.

A case "arises" under federal law either where federal law itself creates the cause of action or where the vindication of a state law right would "necessarily [turn] on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983)). Stated otherwise, a claim arises under federal law if the complaint cognizably pleads that federal law created the claim asserted or the plaintiff's right to relief necessarily depends on resolving a substantial question of federal law.  *Franchise Tax Bd.*, 463 U.S. at 27-28.  Courts determine whether they have federal question jurisdiction by applying the "well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Id*.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 as Plaintiff asserts claims under the Lanham Act (15 U.S.C. § 1051, *et seq.*) relating to trademark infringement.  *See* (Doc. 1).  Additionally, venue is proper here because Defendant's principal office is in this District and because a substantial part of the events giving rise to the claims occurred in the Eastern District of California.  *Id.* ¶ 6.

**B.      Adequacy of Service**

"As a threshold matter in considering a motion for default judgment, the Court must first assess the adequacy of the service of process on the party against whom default is requested." *Trustees of ILWU-PMA Pension Plan v. Coates*, No. C-11-3998 EMC, 2013 WL 556800, at *4 (N.D. Cal. Feb. 12, 2013) (internal quotation and citation omitted).

Rule 4 of the Federal Rules of Civil Procedure provides that proper service can be made by "following state law for serving a summons in action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1). Pursuant to California law, a court is permitted to authorize service on a limited partnership by hand delivery to the California Secretary of State.  *See* Cal. Corp. Code § 15901.16(c)(1).  Service effected in this way is "deemed complete on the 10th day after delivery of the process to the

Secretary of State." *Id.* A party requesting such service must show by affidavit that "process against a limited partnership … cannot be served with reasonable diligence upon the designated agent … by hand in the manner provided in Section 415.10, subdivision (a) of Section 415.20, or subdivision (a) of Section 415.30 of the Code of Civil Procedure …" *Id.*

California Civil Procedure Code § 415.10 allows for service by "personal delivery of a copy of the summons and of the complaint to the person to be served." Cal. Civ. Proc. Code § 415.10. Section 415.20(a) allows for service "by leaving a copy of the summons and complaint during usual office hours in his or her office … and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." *Id.* § 415.20(a). Section 415.30(a) allows for service where copies of the summons and complaint are "mailed (by first-class mail or airmail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgement provided for in subdivision (b) and a return envelope, postage prepaid, addressed to the sender." *Id.* § 415.30(a).

Here, the Court granted Plaintiff's *ex parte* motion for service upon the California Secretary of State upon Plaintiff' showing that service could not be completed with reasonable diligence by the methods set forth in California Corporations Code § 15901.16(c)(1). (Doc. 10). On August 8, 2025, Plaintiff filed proof of service indicating completion of substitute service upon the California Secretary of State by hand delivery of the summons and complaint on July 31, 2025, to Katie Abraham, indicated as authorized to accept service for the California Secretary of State. (Doc. 11). On September 25, 2025, Plaintiff filed a proof of service indicating completion of substitute service upon the California Secretary of state by hand delivery of a copy of the Court's minute order (Doc. 14), the entry of default, and the motion for default judgment documents, on September 26, 2025, to Charles Yarborough, indicating Mr. Yarborough's title as deputy. (Doc. 18).

The directions for substituted service provided on the public website for the California Secretary of State indicate that such service of process must be hand delivered at the public counter in the Sacramento office, located at 1500 11th Street, 3rd Floor, Room 390, Sacramento,

California.[1]  Plaintiff's proof of service of the summons and complaint sets forth that service was effected at this address.  Plaintiff's proof of service of the motion for default judgment sets forth that service was effected at 1500 11th Street, Sacramento, California; this is the main office of the California Secretary of State.[2]

Therefore, Defendant has been adequately notified of this action under Federal Rule of Procedure 4.  *See* Fed. R. Civ. P. 4(d)(4); *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.") (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).

### C.    The *Eitel* Factors

#### 1.    Possibility of Prejudice to Plaintiff

The first *Eitel* factor requires the Court to consider the possibility of prejudice to the plaintiff if a default judgment is not entered.  *Eitel*, 782 F.2d at 1471.  Prejudice may be shown where failure to enter a default judgment would leave plaintiff without a proper remedy.  *Philadelphia Indem. Ins. Co. v. United Revolver Club of Sacramento, Inc.*, No. 2:18-cv-2960-KJM-DB, 2020 WL 773419, at *3 (E.D. Cal. Feb. 18, 2020) (*citing Landstar Ranger, Inc*, 725 F. Supp.2d at 920).

Plaintiff seeks injunctive relief which can only be obtained through a judgment.  Without a judgment in default, Plaintiff would be "continuously exposed to liability" in the underlying action.  *Kemper Indep. Ins. Co. v. Boyer*, No. 2:22-cv-1458-MCE-DB, 2023 WL 4014658, at *3 (E.D. Cal. June 15, 2023) (quoting *Aspen Ins. UK Ltd. v. Killarney Const. Co., Inc*., 2012 WL 1831498, at *2 (N.D. Cal. May 18, 2012)).  Since Defendant has refused to defend this action, if default judgment is not entered, Plaintiff would be left without a proper remedy.  Accordingly, the Court finds that the first *Eitel* factor weighs in favor of granting default judgment to Plaintiff.

#### 2.    Sufficiency of the Complaint and the Likelihood of Success on the Merits

The second and third *Eitel* factors require the Court to consider the merits of the plaintiff's

---

[1] *See* Service of Process, California Secretary of State, *accessible at* https://www.sos.ca.gov/business-programs/business-entities/service-process (last visited March 25, 2026).
[2] *See* Sacramento Office - Driving Directions, California Secretary of State, *accessible at* https://www.sos.ca.gov/business-programs/driving-directions-sacramento (last visited March 25, 2026).

substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. The Court considers these two factors together given the close relationship between the two inquiries. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010).

These two factors will favor entry of default judgment where the complaint sufficiently states a claim for relief upon which the plaintiff may recover. *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2010).

Plaintiff asserts four causes of action: trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin in violation of 15 U.S.C. § 1125(a), unfair competition and trademark infringement under California common law, and unfair competition in violation of California Business & Professions Code § 17200, *et seq. See* (Doc. 1; Doc. 15 at 9-10).

To prevail on a claim of trademark infringement under § 1114, Plaintiff must prove that the infringing entity used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of goods and services, with such use likely to cause confusion or deceive customers. 15 U.S.C. § 1114(1). To prevail on a claim of false designation of origin, Plaintiff must prove that Defendant used in commerce any term, symbol, or device or any combination thereof, or any false designation of origin, which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of [Defendant with Plaintiff]," or as to the approval of Defendant's goods by Plaintiff. 15 U.S.C. § 1125. To prevail on a claim of unfair competition under California Business & Professions Code § 17200, *et seq.*, Plaintiff must prove that Defendant engaged in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

"Because California trademark claims are 'substantially congruent' with federal claims, the analysis under each regime is the same. California unfair competition claims that sound in trademark are also subject to the same analysis." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citing *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) & *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)).

Here, Plaintiff's complaint adequately alleges the elements regarding the aforementioned

causes of action.  It sets forth that Defendant incorporated Plaintiff's registered trademark into its entity name as Defendant's entity name is identical to Plaintiff's name in the registered marks. Defendant's name is likely to cause confusion among the general purchasing public as to connection or approval of any of Defendant's goods and services and as to the use of the name in commerce.  (Doc. 1 at 6-8).  Regarding unfair competition, the complaint establishes that Defendant's conduct is likely to cause deception to consumers as to affiliation or sponsorship of Defendant's business, goods, and services and continue to cause harm to Plaintiff's goodwill and business reputation.  *Id.* at 8-9.

Accordingly, the Court finds that these factors weigh in favor of granting Plaintiff's motion for default judgment.

### 3.  Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct."  *PepsiCo, Inc.*, 238 F. Supp.2d at 1176-77. The amount at stake must not be disproportionate to the harm alleged.  *See Lehman Bros. Holdings. Inc. v. Bayporte Enters. Inc.*, 2011 WL 614079, at *7 (N.D. Cal. Oct. 7, 2011).

Here, Plaintiff seeks a permanent injunction.  Plaintiff seeks no monetary damages in the proposed order attached to the motion.  *See* (Doc. 15-2).  Accordingly, the undersigned finds the fourth *Eitel* factor favors granting default judgment.  *See Magic Leap, Inc. v. Tusa Tuc*, No. 17-cv-00264 NC, 2017 WL 10456729, at *3 (N.D. Cal. Aug. 17, 2017), *report and recommendation adopted*, No. 17-cv-00264-WHO, 2017 WL 10456730 (N.D. Cal. Sept. 19, 2017).

### 4.  Possibility of Disputed Material Facts

The fifth *Eitel* factor requires the Court to consider whether a dispute exists regarding material facts.  *Eitel*, 782 F.2d at 1471-72.  Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is unlikely.  *Landstar Ranger*, 725 F. Supp.2d at 921-22.  Here, since Defendant is in default, all of Plaintiff's well pleaded factual allegations are taken as true.  *TeleVideo Sys., Inc.*, 826 F.2d at 918 (citing *Geddes*, F.2d at 560); *e.g.*, *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no

likelihood that any genuine issue of material fact exists.").

Since Plaintiff's factual allegations are presumed true in this context and Defendant failed to move to set aside the default, no factual dispute exists that would preclude the entry of default judgment. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d, 998, 1013 (C.D. Cal. 2014). Thus, this factor weighs in favor of default judgment.

### 5.    Whether the Default was Due to an Excusable Neglect

The sixth *Eitel* factor requires the Court to consider whether a defendant's default was due to excusable neglect. *PespiCo*, 238 F. Supp.2d at 1177; *Eitel*, 782 F.2d at 1471-72. This factor implicates due process and whether a defendant is "given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objection before a final judgment is rendered." *Phillip Morris USA, Inc. v. Castworld Productions*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Upon review of the record before the court, there is clear indication that the default was not the result of excusable neglect. Defendant was served with the summons and complaint after the Court granted Plaintiff's motion for substitute service. (Doc. 11). The Clerk of the Court entered default on August 22, 2025. (Doc. 12). Defendant was served with the motion for default judgment. (Doc. 18). The Court held a hearing on the motion on November 3, 2025, where Defendant did not make an appearance. (Doc. 21). It is evident that Defendant received reasonable notice of the pendency of this action, the default entered against it, and Plaintiff's pending motion for default judgment in deciding not to defend itself here. Accordingly, there is no indication that Defendant's default resulted from excusable neglect, and this factor favors entry of default judgment. *See Magic Leap*, 2017 WL 10456729, at *3.

### 6.    Policy of Deciding Cases on the Merits

The seventh *Eitel* factor emphasizes the "general rule that default judgments are ordinarily disfavored." *Eitel*, 782 F.2d at 1472. "Cases should be decided upon the merits whenever reasonably possible." *Id*. (citing *Pena v. Seguros La Comersial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).

Defendant's refusal to defend itself in this action renders a decision on the merits virtually

11

impossible.  This factor does not weigh against default judgment.

*    *    *    *    *

The undersigned has considered all the *Eitel* factors and finds that they weigh in favor of granting Plaintiff's motion for entry of default judgment against Defendant.

**D.    Plaintiff's Requested Relief**

Having determined that entry of default judgment is warranted, the undersigned considers Plaintiff's requested relief.  Plaintiff's proposed relief is the entry of a permanent injunction.  (Doc. 15-2).  As discussed above, Plaintiff's well-pled allegations, taken as true, show that Plaintiff is entitled to such relief.  As discussed during the hearing on the motion (Doc. 21), Plaintiff requests in its proposed order language affording it the following relief:

> The California Secretary of State is hereby instructed to update its records and take appropriate action in light of the foregoing injunction, including whatever administrative steps are necessary and appropriate to remove, dissolve, and/or mark as fraudulent the Fake Peter Millar Entity to ensure that it cannot be used to perpetrate further fraud, theft, or infringement[.]

(Doc. 15-2 at 5).

In general, a "federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  "[A]n injunction must be narrowly tailored 'to affect only those persons over which it has power,' . . . and to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda*, 753 F.2d at 727, 728 n.1).  *See* Fed. R. Civ. P. 65(d) (an injunction may bind only the parties, their officers, agents, servants, employees, and attorneys, and other persons "in active concert or participation" with those persons). In other words, the Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. *Id*.

Following the hearing on Plaintiff's motion during which the undersigned questioned the adequacy of Plaintiff's cited authorities in support of such relief, the Court permitted Plaintiff to file supplemental briefing addressing the issue of the Court's authority to award injunctive relief

directed toward the California Secretary of State. (Doc. 21). In its supplemental briefing, Plaintiff cites two cases for the proposition that the Court can order relief directed at the California Secretary of State. (Doc. 22 at 2-3; citing *Alo, LLC v. Alo Yoga Alo, LLC*, No. 25-cv-3204-JFW-(MBKx), 2025 WL 2061877 (C.D. Cal. July 23, 2025) & *Nat'l Grange of the Ord. of Patrons of Husbandry v. California Guild*, 334 F. Supp. 3d 1057 (E.D. Cal. 2018)). In an accompanying declaration, counsel for Plaintiff attaches copies of the order granting the motion for default judgment and permanent injunction in *Alo* (Doc. 22-1, Exs. 1, 2), as well as a copy of the order on the motion for summary judgment in *Nat'l Grange* (*id.*, Ex. 3).

Upon review, the undersigned finds that the cited cases do not support the proposition that this Court possesses the authority to award injunctive relief directed toward the California Secretary of State. In *Nat'l Grange*, another judge of this Court granted summary judgment on the plaintiff's trademark infringement claims and awarded the following injunctive relief: "An order directing the California Secretary of State to recognize plaintiffs as the exclusive representatives of the California State Grange for all purposes relevant to the registration, ownership, and responsibility of such corporate entities." *Nat'l Grange*, 334 F. Supp. 3d at 1072. However, the decision does not cite authority that a court may direct a non-party state actor (the California Secretary of State) to take affirmative action in response to an injunction.

In an earlier case involving the same parties, the court entered judgment in favor of the plaintiff on its trademark infringement claims; however, instead of directing action by the California Secretary of State, the injunction entered by the court directed the defendant to remove the infringing element from corporate registrations and other documents filed with federal, state, or local governments, including the California Secretary of State. *See Nat'l Grange of the Ord. of Patrons of Husbandry v. California State Grange*, No. 2:14-cv-00676 WBS DAD, 2015 WL 5813681, at *1 (E.D. Cal. Sept. 30, 2015), *modified*, 182 F. Supp. 3d 1065 (E.D. Cal. 2016), *and aff'd sub nom. Nat'l Grange of Ord. of Patrons of Husbandry v. California State Grange*, 715 F. App'x 747 (9th Cir. 2018).

Similarly, the *Alo* court granted the injunctive relief proposed by the plaintiff and adopted the plaintiff's proposed order accompanying the motion for default judgment, without further

13

elaboration or modification regarding the language directed to the Colorado Secretary of State.  As such, the court did not discuss or cite authority regarding directing the Colorado Secretary of State to update its records.  *See* (Doc. 22-1 at 10); *see also ALO, LLC v. Alo Yoga Alo, LLC et al.*, No. 2:25-cv-03204-JFW-MBK (C.D. Cal.) (Docs. 21-2, 24).

In *Protiviti Inc. v. Protiviti LLC*, the court granted default judgment to a trademark infringement who, similar to Plaintiff here, sought injunctive relief directed to the California Secretary of State.  The *Protiviti* court noted that "[a]s a final remedy, Plaintiff requests that this Court order or compel the California Secretary of State to de-list or expunge Protiviti LLC from its records.  Plaintiff avers that the California Secretary of State's Office will not 'delist' or terminate Protiviti LLC without a court order compelling it to do so." *Protiviti Inc. v. Protiviti LLC*, No. 2:23-cv-08442-ODW (PDX), 2024 WL 2967321, at *9 (C.D. Cal. June 12, 2024) (citation omitted).  The *Protiviti* court noted that the plaintiff cited to only one case to "support the proposition that this Court has the power to compel or authorize the California Secretary of State's Office to terminate," but the case "does not support the proposition that this Court may compel the California Secretary of State to delist or terminate a limited liability company from its records." *Id.* (citing *United States v. Morris*, No. 2:10-cv-00614-FCD (KJMx) PS, 2011 WL 43579 (E.D. Cal. Jan. 6, 2011)).

The *Protiviti* court noted that the "court in *Morris* relied on the express grant of 26 U.S.C. § 7402(a) to expunge baseless liens (UCC Financing Statements) filed against federal IRS personnel.  In contrast here, Plaintiff does not provide the Court with any authority on whether it may compel the California Secretary of State to expunge or delist an LLC from its records.  Expunging a lien, or UCC Financing Statement, is not the same as delisting or terminating a California limited liability company.  The Court is also reticent to compel dissolution or revocation of an LLC at this stage.  In any event, the Court's grant of an injunction preventing Protiviti LLC from using Plaintiff's marks should sufficiently prevent Protiviti LLC from inflicting additional harm on Plaintiff." *Id.* (citation omitted).

A review of *Morris* confirms that the order in that action involves a UCC Financing Statement.  *See United States v. Morris*, No. 2:10-CV-00614-FCD, 2010 WL 5136180, at *3 (E.D.

Cal. Dec. 10, 2010), *report and recommendation adopted*, No. 2:10-cv-00614-FCD (KJMx) PS, 2011 WL 43579 (E.D. Cal. Jan. 6, 2011) ("26 U.S.C. § 7402(a) permits the court to enter an order expunging baseless liens filed against federal IRS personnel.  Consequently, plaintiff is entitled to an order expunging the meritless lien.") (citing *Ryan v. Bilby*, 764 F.2d 1325, 1327 (9th Cir. 1985)).

A UCC statement is clearly distinguishable from incorporation records.  In *Merscorp Holdings, Inc. v. Mers, Inc.*, the court granted a temporary restraining order in favor of a trademark infringement plaintiff but declined to include in its order language directing the California Secretary of State to take certain actions against use of plaintiff's trademarks.  The *Merscorp* court noted that "Plaintiffs request not only an order enjoining Defendants from using the subject trademark and trade names, but also an order requiring the California Secretary of State to suspend the incorporation for Defendants and post Plaintiffs' address to California's public records for Defendants.  Plaintiffs have not cited, and the Court has not discovered, any statute or case law granting this Court authority to order the California Secretary of State to take the requested actions." *Merscorp Holdings, Inc. v. Mers, Inc.*, No. 16-CV-04380-BLF, 2016 WL 4440252, at *4 (N.D. Cal. Aug. 23, 2016).

After noting that "Plaintiffs argued at the hearing that the Court could issue the requested order based upon its inherent authority or based upon analogy to courts' statutory authority to cancel trademark registrations under the Lanham Act, 15 U.S.C. § 1119 and under California Business & Professions Code § 14230," the *Merscorp* court was "not persuaded that these authorities provide a sufficient basis for it to issue a TRO directed to the California Secretary of State." *Id.*

Here, the undersigned is similarly not persuaded that Plaintiff's cited authorities provide a basis for issuance of Plaintiff's requested relief directed toward the California Secretary of State. *Cf. Price*, 390 F.3d at 1117; *Zepeda*, 753 F.2d at 727, 728 n.1; Fed. R. Civ. P. 65(d)   Thus, the undersigned will recommend that the Court grant Plaintiff's motion for default judgment and enter a modified permanent injunction that does not compel action by non-party California Secretary of State.

///

**IV.**     **Conclusion and Recommendation**

The Clerk of the Court is directed to randomly assign a District Judge.

For the reasons set forth above, the undersigned RECOMMENDS that:

1.  Plaintiff's motion for default judgment (Doc. 15) be GRANTED;

2.  Default judgment be entered in favor of Plaintiff and against Defendant for trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin in violation of 15 U.S.C. § 1125(a), unfair competition and trademark infringement under California common law, and unfair competition in violation of California Business & Professions Code § 17200, *et seq.*;

3.  Defendant be permanently enjoined and restrained from:

    a.  Engaging in any activity that infringes Plaintiff's rights in its PETER MILLAR mark or trade name;

    b.  Engaging in any activity constituting unfair competition with Plaintiff;

    c.  Manufacturing, distributing, providing, selling, marketing, advertising, displaying, using, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise, display, use, or promote any goods or services bearing or in connection with the mark PETER MILLAR or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's PETER MILLAR mark or trade name, including using the "Peter Millar LP" business name, or any other business name or mark similar thereto, alone or in combination with other words, names, styles, titles, designs or marks;

    d.  Using in any other way any other mark or designation so similar to the PETER MILLAR marks that is likely to cause confusion, mistake, or deception as to an affiliation, connection, sponsorship, or endorsement of Defendant and/or their products or services by or with PETER MILLAR;

    e.  Representing or implying that Defendant is in any way authorized by, sponsored by, affiliated with, endorsed by, or licensed by Peter Millar;

16

f. Filing any materials with any government agency or official of any kind relating to PETER MILLAR or any of Peter Millar's trademarks, including, but not limited to, filing anything for the Defendant (other than materials to dissolve that entity), and engaging with any public office in any way relating to PETER MILLAR or the PETER MILLAR marks;

g. Making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant or Defendant's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendant;

h. Using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

i. Registering or applying to register any trademark, service mark, domain name, trade name, social media account, or other source identifier or symbol of origin consisting of or incorporating the mark PETER MILLAR or any other mark that infringes or is likely to be confused with the PETER MILLAR mark or trade name, or any goods or services of Plaintiff;

j. Using, registering or applying to register any trade name, entity name, or "d/b/a" name consisting of or incorporating the mark PETER MILLAR or any other trade name, entity name, or "d/b/a" that infringes, is colorably similar to, or is likely to be confused with the PETER MILLAR mark or trade name; and

k. Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a.) through (j.).

4. Defendant be ordered to deliver to Plaintiff's attorneys within thirty (30) days after the

17

entry of the order, to be impounded or destroyed by Plaintiff, all graphics, literature, signs, labels, prints, packages, wrappers, containers, advertising, and promotional materials, products, and any other written materials or items in Defendant's possession, custody, or control that bear the name "PETER MILLAR" and/or any confusingly similar version of the PETER MILLAR mark, including the "Peter Millar LP" business name or any other mark or name similar thereto, together with all means and materials for making or reproducing the same, pursuant to 15 U.S.C. § 1118, and other applicable laws;

5.  Defendant be ordered to serve on Plaintiff, within thirty (30) days after the entry of the order, a report in writing setting forth in detail the manner and form in which Defendant has complied with the above;

6.  Plaintiff be ordered to serve the Court's order upon Defendant by substitute service on the California Secretary of State; and

7.  The Clerk of Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown.  The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

///

///

///

18

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **April 3, 2026**

_____
UNITED STATES MAGISTRATE JUDGE